the first case on calendar Garvey v. Sullivan. Good morning. Good morning. May it please the court. My name is Donald Farrick of the firm of Farrick, Nugent, McCartney. We represent the plaintiff appellant in this matter, Michael Garvey. This case, in simplest fashion, your honors, can be resolved procedurally by your own decision. A decision rendered earlier in 2018, Katzen v. Thank You and Good Luck Corp. That case, we believe, governs and requires reversal of the district court decisions because in that case, like here, a sua sponte summary judgment decision was rendered one week before the trial, after the parties had made their pre-trial submissions, and after the parties' summary judgment motions had been denied requiring a trial of disputed issues of fact. Did the district court consider anything from the motions in limine? Absolutely. Well, let me finish my question. That contributed to her summary judgment decision, the second summary judgment decision? Yes. How do we know that? In particular, we know that because the court considered and adopted some of the theories that the defendants presented on their case, presented only in the motion in limine. Was there any factual material? Yes. How do we know? Well, you say so, but how do we know? Because I'm going to address in the original summary judgment motion, the only comparator that was addressed as being similarly situated to the plaintiff was a comparator who was sergeant number one. The only person addressed by whom? By the town and the defendants in their original summary judgment motion. And in the original summary judgment motion was addressed in two paragraphs, the similarly situation of the sergeant number one. I'm just going to use that. But didn't the district court have number three as well, as part of the summary judgment materials? Maybe she didn't refer to him in her decision, but didn't she have the materials as part of the summary judgment materials, not added to by the in limine materials? You know what I'm talking about, right? Yes, I do. What's the prejudice is the question is. So here's the prejudice. Well, tell me first, did she have the comparator information on officer number three during summary judgment? Yes. So it wasn't new during in limine? Correct. It wasn't new. And with regard to sergeant number two, if I can just focus on sergeant number two for a second, the information in the summary judgment motion was never argued. But in the motion in limine, there were four pages addressed to the argument as to each of the officers, each of sergeant number one, number two, and police officer number three. The significance of sergeant number two, though, is that in the summary judgment motion, there was a particular exhibit, exhibit KKK. And that particular exhibit was a letter from sergeant number two's personal attorney. It was a letter dated August 6, 2008. The only reason why I tell you about it is because that particular letter was written after sergeant number two had served in a transitional light duty capacity for a sufficient window of time that they made a determination, the sergeant did, that he was no longer fit and could not perform or would never return to full duty. So he wrote a letter to the police department. And the attorney, when he wrote the letter to the police department, notified the police department that his client was never going to return to full duty and that if he was never going to return to full duty, he was requesting that his current transitional light duty position be made permanent. He actually supplied to the police department, along with his August 2008 letter, his doctor's report showing that his condition was permanent. At that time, again, it was not argued on summary judgment. It was not argued with respect to sergeant number two as to what his circumstance was before his doctor wrote a particular doctor's note. Exhibit T, which was appended to the motion in limine. Exhibit T, appended to the joint motion that the defendant submitted for a motion in limine, was a doctor's note that was dated November 25, 2009. The significance of which was that when they presented that doctor's note, the argument that was made that accompanied the presentment of that doctor's note was that, and I'm going to quote from the town's argument, but it says, quote, once sergeant number two's physician advised the town that his on-duty injury was permanent, at which point sergeant number two was already eligible for retirement, the town stated that no permanent light duty position was available and sergeant number two retired. The significance of that is they were offering temporal proximity to the decision of the town to retire sergeant number two as though he hadn't served for the 18 months prior to that delivery of that letter, in a light duty position with full knowledge that he was never going to return and that he was permanently disabled. Why shouldn't we accept what the district court wrote, which is that the in limine motions set out a clearer version of the facts than was previously before the court, a clearer version of the facts, meaning a clearer version of the same facts. Remember, in this particular instance, we were not given the right to oppose the motion in limine. The court reconsidered summary judgment before we opposed the motion in limine and terminated the motions and dismissed the case. Had we have had the right to oppose the motion in limine, even just the motion in limine, we would have pointed out that prior note, the KKK note, was a note that was delivered from sergeant number two's attorney at a time when everybody was aware that he was permanently disabled and they continued him in the light duty position and they did it under a construct, the construct which is my client's theory of the case, which is that independent of their stated formal policy that they do not have any permanent light duty positions, they had a de facto policy. They had a de facto policy that would accommodate those who were permanently disabled up until the date of their full retirement. How much time did your client have left before he would be eligible for permanent retirement at the time of his discharge? Fourteen months. And so the request, your honor, was a request that was not made in a vacuum. One of the individuals with whom he was brought into the force, with whom on the very day he was brought into the force, he joined the force, with whom he became a sergeant on the very day that he became sergeant, the other guy became sergeant, that sergeant, who was sergeant number one, was injured. Injured in a non-workplace injury and struck a deal with the town as to how he would be retired. And it required a retirement by a date certain. That date certain was 18 months after they struck the deal. The deal was struck on August 2nd, 2008. Excuse me, let me back that. On August 2nd, 2011. His retirement date was February 2013. When my client asked for an accommodation, he made the simple request. I want to do the job I've previously been doing while disabled and I want to do it in the same fashion that you've afforded me in the past and you're currently affording sergeant number one, but sergeant number one is going to vacate his position and I want to do the same post moving forward. That was the simple request. It was made at... If that was accommodated, then the role of desk sergeant would be filled for a period of years by somebody who could not do all of the requirements of a regular police officer. It would have been filled for approximately 14 months. I know, but it had already been filled for like 18 months. Well, you're on... I point out that... It becomes sort of a... I mean, I'm not saying... I'm not ruling one way or the other. I'm just saying it doesn't seem all that irrational to say that we can't let the post of a desk sergeant simply become the post of somebody who is not able to do the full range of work on a permanent, ongoing basis. So the record shows that my client was capable of doing the essential functions of the job. He testified to it. What is before the court is a dispute as to what... When you say the job, you mean the job, you mean a desk sergeant. Desk sergeant, yes. Who is at the desk. Correct. So we're asking... It's not always at the desk. Well, there are three sergeants who are on on every shift. One is the turnout officer, one's the road, and one's the desk sergeant. They fill the positions... They rotate. Well, that's the argument, but there's nothing in writing that shows that they rotate. In practice, they don't rotate, but prior people have... You misconceive of the nature of what an accommodation is. An accommodation is not getting the employer simply to do otherwise about some of the requirements of the job. You're saying that the employer should structure the job the way we want it structured, leaving out the things that my client can't do and foisting them on somebody else when they arise. But an accommodation means somehow changing the employer's procedures so as to enable the person to do all the requirements of the job. You want to simply drop some of the requirements of the job, the ones that your client can't do, but that's not what an accommodation is. We're not asking for that. We're not saying drop the... You're not saying it explicitly, but that's the consequence of your argument. Well, but there's two halves to the equation, right? There's the essential functions of the job, and there's the marginal duties of the job. And so if my client can fulfill the essential functions of the job, he's entitled to be accommodated. They're the essential functions of the job as you view them, but not as the employer has viewed them traditionally. So interestingly, the employer, which in terms of defining the essential functions in this case, was the police chief, his lieutenant... What would happen if circumstances arose that required the desk sergeant to do the kinds of physical things that a patrolman must do, which the desk sergeant has as among the requirements of his job? They would have to be foisted onto somebody else because your client would be unable to do them. With due respect, General Patton didn't run the field. He didn't drive the tank. He gave direction. This is a supervisory position. In the job specification and the job questionnaire, it does not say any physical attribute that's required of the sergeant. We could joke about out-of-shape officers having donuts and coffee. That's not really what this is about. This is about a supervisory person who, with the age and experience of his job and the By the way, I point out for the record that my client did an exemplary job with positive reviews throughout. This is an individual who's acquired experience, knowledge, and he's exercising the prerogatives of a superior, a supervisor on staff. The function about the rotation, about the task of rotating, the testimony from Officer Lieutenant Chinnikoff was that that was resolved by seniority amongst the people. My client would be the most senior on staff. He would have the prerogative to choose which of the three assignments he could choose. He chooses the desk. That's without an accommodation. But with accommodation, he's saying, just give me that and schedule normally. As for interacting with prisoners inside the well or having to deal with people, the officer comes in off the road with somebody. The arresting officer comes in. He's also escorted on many occasions by the patrol sergeant, the one who's out on the road duty. The desk sergeant sits in a different room, can observe and supervise through live feed camera what's going on. There can always be two officers there. I've got to be clear on this. This is the largest municipal police force in the state. We're not talking about an instance where we have seven to ten officers. You're talking about employees of almost 200 in number. We have the argument. You've reserved a minute to rebuttal, so we shall hear you then. Thank you. Good morning. May it please the Court. My name is Leo Dorfman from Sokoloff Stern LLP, and I represent the appellee defendant Michael Sullivan in this case. On the procedural issue, I'd like to just address briefly. I think Katzen does not control this case for a couple of very important reasons. It's distinguishable at least for two very important reasons. One is, in Katzen, the parties cross-moved only for partial summary judgment, not for total summary judgment. So when they cross-moved for summary judgment, none of the parties were on notice. None of the parties had any expectation that the case might get dismissed on the summary judgment motion. Your adversary's argument is that when new facts are introduced in the eliminate motions, and if they are relied upon by the district judge in granting summary judgment for one party, then by definition the other party has not had the opportunity to indicate that there's a question of fact. And if that were the case in this case, if there were facts introduced on the eliminate motion, there might be an argument to be made, but that's just not the case here. Exhibit KKK, which my adversary has made a lot of here, was submitted by the town along with their reply papers in summary judgment briefing. In our memorandum of law, Sullivan's, we addressed the light-duty argument. In plaintiff's opposition and cross-motion, they raised sergeants one and two and a police officer and discussed them at length. In our reply memorandum of law on page 12, we argued that plaintiffs can't save his claim by pointing to other CPD members, including sergeant one, sergeant two, and officer number three. In the town's reply memo of law on pages one, seven, and eight, that's document 227 on the docket, and on page 11, they discussed sergeants one and two and officer number three, and made the argument that they weren't similarly situated to plaintiff, and they were not offered permanent light-duty positions. In plaintiff's own reply papers, they addressed these arguments on page three, talking about defendants' attempt to distinguish other similarly situated officers. By the way, as to Exhibit KKK, which was submitted with the town's reply brief, the plaintiff had effectively a surreply because they had cross-moved for summary judgment. And so anything submitted, any exhibits, could have been addressed at that point. If my next question should more easily be addressed to the town, let me know, but my next question is how do you respond to your adversary's argument that Mr. Garvey had sufficient seniority, he could choose whether to be the sergeant in the field or the sergeant behind the desk, and that being the case, he chooses to be the one behind the desk? Well, Judge, I'd rather duck that question, if I could, and punt it, and direct my argument and my time more towards the First Amendment claim, because that's the one being asserted against my client. Well, since my adversary didn't raise any arguments on that point, maybe if I could just address any questions that the Court might have on that. I'm not being able to respond to the motion in limine. I'm sorry, Judge? What about not being able to respond to the motion in limine? The motion in limine was never decided one way or the other, so there's no reason . . . Is it kind of unfair, though, where there's motions in limine filed by the defendants, and then she just re-decides the summary judgment, but not even getting a response on the motion in limine when she said, well, matters in the motions in limine caused me to kind of take another look at this. Was that unfair, though? I would say no, Judge, because anything could cause a district court judge to have another thought and go back and review the summary judgment motion papers and take another look and decide it on those papers, which is what the judge did here. That it happens to be the motion in limine, I think, is just beside the point, and so there's no reason for a response. If the judge happens to be thinking about another case and sees an interesting argument or sees something come up on the news and thinks, oh, I should go back and re-read those papers, the other party doesn't have . . . Well, none of the parties have an opportunity to respond to that, but it's within the judge's inherent authority to do that, so I don't think there's any prejudice. I see that I'm out of time. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is John Flannery. I represent the town of Clarkstown and former supervisor Alex Gromack. When addressing the procedural aspects of this case, it's important to note that none of the factual findings that the district court made in deciding the summary judgment motion were in the limine motion and not the summary judgment motion. When Mr. Garvey's counsel writes in his brief that those materials were not in the moving papers, we're being very cute and we're talking about the motion papers, the moving papers, and not the reply papers because it's in the opposition to the motion that the plaintiff raises Sergeant No. 2 and Officer No. 3. The circumstances of those two officers are dealt very specifically and very carefully in the reply briefs that are submitted and in the materials that are submitted in reply by the defendants. There is not a single factual finding that the district court makes that is not contained in either an exhibit, the Rule 56-1 statements, or an argument that's put forth by the defendants in both the moving papers and the reply papers. Not a single one. So to stand here and say that this didn't occur is a little suspect, to say the least. What about a theory applied to the facts? There is no theory that's put forth. All the theories were fully briefed on the summary judgment motion and all the eliminate motion, which the plaintiff filed the motion to eliminate at the same time the defendants did. The eliminate motions caused the district court to go back and examine the record from the summary judgment motion and recognize that she had made a mistake and to grant summary judgment. The bottom line is when you look at the ADA claims, the plaintiff is not a qualified individual under the ADA, and you don't have to look any further than his own testimony. In the 207C hearing, he testified that he could not perform the essential functions of the job. In fact, he gave a laundry list of all the things that a desk sergeant was required to do that he couldn't do. A laundry list. Now... The obvious question of why not a reasonable accommodation to him when it looks like Sergeant 1, Officer 3 sought and received as part of their settlements the same deal. That is, they could be desk sergeants or desk officers for, I think it was 18 months for both of them until they retired. That's the obvious question here. Why not for him for 14 months? Because Mr. Garvey chose to litigate the issue of whether he was permanently disabled. Each of those two officers that you mentioned had claims. The town's position was they were entitled and required to work full-time. They took the position that under 207C they were disabled. So in the face of a 207C hearing, they reached a settlement that they would receive a light-duty assignment in a temporary fashion as a result of a settlement. Rather than do that, Mr. Garvey chose to litigate it. And he testified in a fashion that when he was at the 207C hearing, was designed to establish that he was disabled and couldn't do the job. When he won that he was disabled, but the arbitrator found that it was not as a result of an on-the-job injury for which that would cut off any compensation or benefits he would receive from the town, he suddenly shifted. He shifted from I can't do the job to, well, I can do the job if you give me accommodations. But the accommodations require him to avoid essentially all physical contact. He would be in a position where he couldn't have any physical contact. You referred to the desk sergeant's job as a light-duty assignment. On a temporary basis. It was transitional. And when he performed it. By light-duty assignment, you mean that you don't do all of the bending, crawling, shooting requirements of a regular police officer. No, only sergeant number one was ever assigned to the desk sergeant, not sergeant number three. And sergeant number one, his only physical disability was he couldn't sit or stand for more than 30 minutes. Other than that, he could do all the requirements of the job. Mr. Garvey is in a dramatically different position. As the record establishes. What do you say to your officer's argument that the plaintiff had more seniority than anybody else? I mean, he was close to retirement, not surprising. And, therefore, of the three people who could be assigned to desk duty or to field duty or whatever, he had the seniority to insist, reasonably under the rules applying at the time, that he could be the desk sergeant. But even if he was the desk sergeant, his testimony is he can't do the functions of the desk sergeant himself. He was not physically able to do those functions. When somebody was arrested, if there wasn't another supervisor in the building, they had to take a sergeant off the streets to come in and book the inmate. That's a matter of safety. This is not an issue of whether he had seniority. It's an issue of whether he could do the job. And when it was in his interest to say he couldn't do the job, he testified that he couldn't do the job. And then when the determination was it wasn't an on-the-duty injury, his position suddenly morphs, and this becomes an ADA claim and not a 207C claim. The district court properly granted the defendant's summary judgment, and we would request that the order be affirmed. Unless the court has any other questions, I'll rest on my brief. Thank you, Your Honor. Thank you for your rebuttal. Thank you. Two points very quickly. One, my client was injured in the line of duty, and he was injured in the line of duty affecting an arrest. And he was injured in- My understanding is that the arbitrator found that the condition that was afflicting him at the time at issue was a gouty condition that did not have to do with his injury in the line of duty. Agreed. So here's what happens. Guy gets hurt. He's got a preexisting condition, which is gout. It takes him longer than most to actually recover from it, and they go through a surgery. When they go through a surgery, when he comes out of the surgery, he's permanently partially disabled in his left knee. He does have the continuing preexisting effect of gout that he deals with as well, but his residual effect to his knee is his knee buckles. That's the condition we're talking about, a knee buckling issue. And so I only point that out because they say his testimony was designed to show a disability, but he had the disability, and he never got back to anything more than maximum medical improvement. He didn't get back to the former self. Second, if I could just address Your Honor, because Your Honor had a case earlier this year, a case called Rothfield County of Nassau, and in that case it dealt with a plaintiff's ADA claims where the claim was that he was collaterally stopped from asserting in federal court the arguments that were made in state court. And in that case, the actual underlying claim was a New York State human rights law claim that has the exact same elements as an ADA claim. So when he lost his Article 78 claim, he effectively lost his ability to assert any similarly situated set-of-facts claim, such as the ADA claim, in federal court. But this isn't that case. The underlying 78 case in this case actually has a final paragraph to it to say, I'm not addressing your ADA claims. I'm not dealing with the ADA claims. Those are going to be resolved in federal court. Why? Because the essential functions were never addressed. There is a huge difference between full duty and essential functions. There is a huge difference between what they're saying the policy of the Department is, which is anybody with a permanent disability gets no relief under the ADA. That's violative of law. Why? Because the severity of the injury is not addressed in it. Why? Because in addition to the severity of the injury, the permanency of it is the disqualifier, not whether or not the person can do the essential functions. Thank you. Thank you. Thank you all. We'll reserve decision.